JACOB DOLL & SONS, Inc., v. RIBETTI.

(Circuit Court of Appeals, Third Circuit.    March 13, 1913.)

No. 1,630.

1. MASTER AND SERVANT (§ 320*)—PERSON FALLING FROM BUILDING—INJURY
   TO PEDESTRIAN—INDEPENDENT CONTRACTOR.
   Where the tenant of a building, the outside wall of which was con-
   structed flush with the sidewalk and six stories high without safety ap-
   pliances to hold persons engaged in cleaning windows on the outside, en-
   gaged an independent contractor to clean the windows, and one of his
   servants, while at work, by reason of the absence of such safety appli-
   ances, fell to the street, and struck and injured plaintiff as he was pass-
   ing on the sidewalk, the work required of the servant being inherently
   dangerous, the servant would be regarded as the servant of the tenant
   who was liable for the injuries sustained, regardless of the employment
   of the independent contractor.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1261;
   Dec. Dig. § 320.*]

2. MASTER AND SERVANT (§ 332*)—INJURIES TO THIRD PERSONS—EXERCISE OF
   CARE—QUESTION FOR JURY.
   Where defendant, a tenant of a building erected flush with the side-
   walk, permitted the servant of an independent contractor to stand on
   window ledges to clean windows on the outside without providing scaf-
   folding or other safety appliances, and the servant fell and injured plain-
   tiff, who was walking past the building, whether the tenant was negli-
   gent in not providing scaffolds or safety appliances was for the jury.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1274–
   1277; Dec. Dig. § 332.*]

3. MASTER AND SERVANT (§ 330*)—INJURY TO THIRD PERSON—BODIES FALLING
   FROM BUILDING—RES IPSA LOQUITUR.
   Where a pedestrian walking on a sidewalk was struck and injured by a
   servant falling from an adjoining building while engaged in cleaning
   windows on the outside without safety appliances, proof of the happening
   of the accident was sufficient to raise a presumption of negligence on the
   part of the occupier of the building under the rule res ipsa loquitur.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
   1270–1272; Dec. Dig. § 330.*]

In Error to the District Court of the United States for the Western
District of Pennsylvania; James S. Young, Judge.

Action by Giovanni Tommaso Ribetti against Jacob Doll & Sons,
Incorporated. Judgment for plaintiff, and defendant brings error.
Affirmed.

William S. Dalzell, of Pittsburg, Pa. (J. F. Tim and Dalzell, Fisher
& Hawkins, all of Pittsburg, Pa., of counsel), for plaintiff in error.
Arthur O. Fording, of Pittsburg, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit
Judges.

GRAY, Circuit Judge. The defendant in error (hereinafter called
the plaintiff) brought an action of trespass in the court below against
the plaintiff in error (hereinafter called the defendant), to recover

damages for personal injuries received by him while passing along the sidewalk in front of the building occupied by defendant, in the city of Pittsburgh. The statement of claim sets forth the following:

That on the 14th day of February, 1910, and prior thereto, defendant was the lessee and occupant of a certain building on Penn avenue, one of the principal streets in the said city of Pittsburgh and devoted chiefly to business purposes. The building was six stories in height and stood flush with the sidewalk of Penn avenue, with windows of the ordinary type, intended to be opened and closed by sliding their sashes up and down. Along the side of the said street next to this building was the usual sidewalk, which, being in a frequented part of the city, was in constant use by pedestrians at all hours of the day.

That in the said city of Pittsburgh, it had been a custom to have the windows of such buildings cleaned by persons standing outside of the sash and on the sills of the windows, secured from falling by a stout belt worn about the waist, with a strap on each side thereof, fastened to a hook or other fixture set for the purpose in the side frames or casing of each window. That it was also a custom for persons engaged in the cleaning of windows, whether for themselves or under contract for others, to provide their workmen so engaged with belts and straps and the appropriate hooks or fixtures, for use in connection therewith, for the obvious purpose of protecting, as well the persons passing along the sidewalk as the cleaners themselves, and that windows on high buildings were generally equipped by the owners or occupiers thereof with such hooks or other fixtures.

It is then averred that the building occupied by the defendant was not and never had been provided with such hooks, or with any other fit or appropriate fixtures, for the purpose stated.

That at sometime before said 14th day of February, 1910, defendant entered into a contract with one Hearn, for cleaning the windows of the said building at stated intervals. That on that day, the windows opening upon said avenue were being cleaned under said contract by the agents and servants of Hearn. H. C. Burrell, one of said agents or servants, while so engaged, was standing on the outer sills of the windows while doing his work, without using a safety belt or other adequate safety appliance, as theretofore referred to, to prevent him from falling.

The defendant, long prior to said 14th day of February, 1910, "knew, or by the exercise of reasonable care should have known, that the windows of the building were not equipped with the customary hooks or other appropriate fixtures hereinbefore referred to; and knew, or by the exercise of reasonable care should have known, that some of the windows giving upon Penn avenue were so defective * * * that they could not be cleaned on the outside, except by persons standing on the outer sills thereof."

That on the day last aforesaid, while plaintiff was lawfully walking upon the sidewalk on Penn avenue, and passing the said building, the said Burrell, then engaged in so cleaning a window on the fourth story front thereof, above said sidewalk, and without the knowledge of the plaintiff, accidentally lost his balance and fell upon plaintiff, thereby injuring him, as thereinafter set forth.

The plaintiff was a physician and surgeon, practicing in the city of Pittsburgh, and was severely and permanently injured by this accident.

The facts alleged in the statement of claim are for the most part undisputed, and there was evidence tending to support all of the allegations of fact upon which were based the charge of negligence of the defendant. The case was submitted to the jury, with a charge by the court, and to the judgment upon the verdict in favor of the plaintiff, this writ of error is taken.

[1] The only question raised by the assignments of error (apart from the one founded on the refusal of the court to direct a verdict for the defendant), is as to the legal responsibility of the defendant, as occupant of the building, for such neglect or default of an independent contractor undertaking to clean defendant's windows, as made the work unreasonably dangerous to those of the public lawfully using the sidewalk beneath. It was insisted by the defendant in the court below, as here, that the window cleaning contractor, being a man skilled and experienced in that line of work, had taken the responsibility for the conduct thereof out of the hands of the defendant into his own, and that he alone, and not the defendant, was liable for any negligence in the conduct of that work.

In this case, however, we agree with the court below, that the fact that the work was in the hands of an independent contractor cannot be interposed as a defense to the liability with which the defendant is sought to be charged.

The defendant was a lessee and occupier of the building in question. As such, he was in control thereof, and the law imposes upon such occupier a very positive duty to those using the highway upon which the building abuts, to use the care requisite, according to the circumstances, to guard them against injury resulting from the condition of the premises, or from what is being done in or about the same, by the direction or permission, or, for the convenience and benefit, of the occupier. In cases like the present, the exigence of such duty is not affected by the fact that the faulty conditions, from which resulted the damage complained of, were due to the negligence of an independent contractor in operating under the contract. This duty is peculiar to the situation, and is as just as it is severe. It places the responsibility for what happens on such premises on the occupier who is in control of the same, and protects those of the public who, in the use of the highway along such premises, lawfully come within dangers originating thereon. Of such dangers, the casual user of a sidewalk is generally unwarned, and the matters from which they arise are specially within the knowledge, or should be within the knowledge, of the occupier.

What is said by Sir Frederick Pollock in his philosophical work on Torts, in relation to the duties imposed by law on the occupiers of buildings, applies as well to the duty of such occupiers to those who are in lawful use of the adjacent highway, as to the duty to those who resort to the premises in the course of business in which the occupier is concerned or interested:

"The duty is founded not on ownership but on possession, in other words, on the structure being maintained under the control and for the purposes of the person held answerable. It goes beyond the common doctrine of responsibility for servants, for the occupier cannot discharge himself by employing an independent contractor for the maintenance and repair of the structure, however careful he may be in the choice of that contractor. Thus the duty is described as being impersonal rather than personal. Personal diligence on the part of the occupier and his servants is immaterial. The structure has to be in a reasonably safe condition, so far as the exercise of reasonable care and skill can make it so. To that extent there is a limited duty of insurance, as one may call it, though not a strict duty of insurance such as exists in the classes of cases governed by Rylands v. Fletcher [L. R. 3 H. L. 330, 37 L. J. Ex. 161]."

Where the thing committed to an independent contractor to do for the occupier, on or about his premises, is of itself inherently dangerous, such contractor is the mere instrument or agent of the occupier, so far as concerns the responsibility to those lawfully coming within such danger. In the present case, the responsibility of the defendant, as occupier, is the same as if the window cleaner, who fell from the window sill, had been the ordinary servant of the defendant. He was bound in either case to use the care requisite to see that the work of cleaning his windows was not made unreasonably dangerous to one passing on the sidewalk. This, in effect, is the principle announced by the Supreme Court in the case of Water Co. v. Ware, 16 Wall. 566, 21 L. Ed. 485:

"When a person is engaged in a work, in the ordinary doing of which a nuisance occurs, the person is liable for any injury that may result to third parties from carelessness or negligence, though the work may be done by a contractor."

The duty imposed by law on the occupier is an absolute duty, which he cannot shift. It is by reason of his control thereof, that the occupier of premises on a public street or highway owes, as has been said, a duty of quasi insurance to those using the highway against injury resulting from the condition of the premises, or from what is being done on or about the same for the convenience and benefit of the occupier. So a general contractor having possession and control, for the purpose of erecting buildings for the owner of the premises, cannot relieve himself from liability for a dangerous situation, though created by an independent subcontractor, as recently decided by this court in the case of Wilson v. Hibbert, 194 Fed. 838, 114 C. C. A. 542.

There is little or no difference in English or American authorities on this point, and it is unnecessary to cite the long list of such authorities which have been brought to our attention by the ability and industry of the learned counsel of the defendant in error. This principle was given a wider application by the Supreme Court in the case of Chicago v. Robbins, 2 Black, 418, 17 L. Ed. 298. In that case, the defendant, owning a lot in Chicago, contracted in writing with another to erect a building thereon, which included the excavation of an area in the sidewalk next to and adjoining it, so as to furnish light and air to the basement. After the excavation had been made, it was left unguarded by the contractor, and the plaintiff was injured by

falling therein. On the ground that the contractor was doing the thing which he was employed to do, which was inherently dangerous to the users of the sidewalk, the court held the owner who had employed the contractor liable for the injury occasioned by the neglect to surround the excavation with sufficient lights and guards. Speaking of the owner and employer, the court said:

"He cannot escape liability by letting work out like this to a contractor and shift responsibility on him if an accident occurs. He cannot even refrain from directing his contractor in the execution of the work, so as to avoid making the nuisance. A hole cannot be dug in the sidewalk of a large city and left without guards and light at night, without great danger to life and limb, and he who orders it dug, and makes no provision for its safety, is chargeable, if injury is suffered."

This wider and more inclusive rule is variously stated in a multitude of cases, both English and American, and is very clearly stated by the Supreme Court of Ohio in Covington & Cincinnati Bridge Co. v. Steinbrock, 61 Ohio St. 223, 55 N. E. 619, 76 Am. St. Rep. 375:

"The weight of reason and authority is to the effect that where a party is under a duty to the public or third person to see that work he is about to do or have done is carefully performed, so as to avoid injury to others, he cannot, by letting it to a contractor, avoid his liability in case it is negligently done to the injury of another. * * * It is the danger to others, incident to the performance of the work let to contract, that raises the duty and which the employer cannot shift from himself to another, so as to avoid liability, should injury result to another from negligence in doing the work."

In such cases, the principal makes the contractor an agent or servant, for whose negligence he is responsible. So in the English case of Bower v. Peate, 1 Q. B. Div. 321. Here the plaintiff and defendant occupied adjoining houses. Defendant, having decided to rebuild his house and in doing so to carry his foundations lower than the foundations of the plaintiff's adjoining house, entered into a contract with a builder to do all the necessary work. The written contract contained a clause by which the contractor agreed to take upon himself the risk and responsibility of shoring and supporting, as far as necessary, the adjoining building affected by this alteration, during the progress of the work. Cockburn, Chief Justice, delivering the opinion of the Queen's Bench Division of the High Court of Justice, says:

"The answer to defendant's contention may, however, as it appears to us, be placed on a broader ground, namely, that a man who orders work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be prevented, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of his responsibility by employing some one else—whether it be the contractor employed to do the work, from which the danger arises, or some independent person—to do what is necessary to prevent the act he has ordered to be done from becoming wrongful."

See, also, Tarry v. Ashton, 1 Q. B. Div. 314.

If the work to be done by the contractor for the occupier is necessarily attended with some danger, even when performed without negligence by the contractor, such occupier would be responsible for having neglected to guard against such inevitable danger should an inno-

cent third person suffer injury therefrom.  Thus, in the case of Jager v. Adams, 123 Mass. 26, 25 Am. Rep. 7, where one was building a brick wall abutting on the highway, and plaintiff was injured by a falling brick, though the servant who dropped it was not negligent, the court said:

"It is a matter of common knowledge and experience that when men are breaking and handling bricks in the construction of such a wall, some of the material may fall, although the workmen are in the exercise of ordinary care.  The immediate cause of the evil in such case may indeed be accidental, but it is an accident which the builder of the wall, in view of the danger to life and limb, may be bound to contemplate and provide against by safeguards or barriers, so that the traveler may not be exposed to injury."

See, also, Shipley v. Fifty Associates, 101 Mass. 251, 3 Am. Rep. 346.

We have not overlooked the fact that the falling body by which the plaintiff was injured was a living man, capable of exercising his own will and capable, therefore, of causing or contributing to his fall by his own negligence.  But we have not been able to discover in these facts a sufficient reason for relieving the occupier of the premises from liability.  As we have tried to show, the man whose fall did the harm in question must be regarded as the servant of the occupier, although an independent contractor did intervene, and the occupier cannot escape liability for the negligence of his servant and agent, even under such unusual circumstances as these.  On principal, the servant's control over his own will and his own movements does not seem to make any difference.  The occupier was the master, and if in that character he had ordered the servant to assume the dangerous position, and the fall had taken place while the servant was obeying the order, the master would have been as completely liable as if the falling body had been an inanimate object carelessly placed on the window ledge. And we think the same result must follow, although the master knowingly permits (but does not directly order) his servant to assume a position so dangerous that the servant's lack of care for his own safety may be followed by injury to an innocent passer-by.  This is little more than a restatement of the proposition, that he who, either himself or by an agent, does an act inherently dangerous to the innocent users of a highway—whether the order be given directly or through the mouth of an independent contractor—is charged with a high degree of responsibility, nearly akin to the responsibility of an insurer.

[2]  The court, having correctly instructed the jury that the employment by defendant of an independent contractor to clean the windows of his building was not available as a defense, it only remained to submit to the jury, not whether this work was dangerous, but whether defendant had used reasonable care in guarding against the dangers that were naturally incident thereto.  It is a matter of common knowledge that work done on the outside of a building, such as in this case, or in the case of work done on scaffolding, is attended with dangers to those using the sidewalk beneath.  Such accidents, whether negligent or non-negligent, must be guarded against, either by means calculated to prevent the falling of bodies, or by such bar-

riers or warning notices as would prevent the use of the sidewalk within the area of danger, the only question to be determined being whether defendant has used reasonable care to safeguard the situation.

[3] The charge of the court below was in another respect more favorable to the defendant than it had a right to demand. The jury were repeatedly instructed that the burden rested upon the plaintiff to show, first, that this work was dangerous work, and second, that the defendant was guilty of negligence in not acting as a person of ordinary·prudence should act, in order to guard against its dangers. The rule of evidence applicable in such cases is thus stated by Sir Frederick Pollock:

"Where damage is done by the falling of objects into a highway from a building, the modern rule is that the accident, in the absence of explanation, is of itself evidence of negligence. In other words, the burden of proof is on the occupier of the building. If he cannot show that the accident was due to some cause consistent with the due repair and careful management of the structure, he is liable."

In other words, the maxim "res ipsa loquitur" is applicable to cases like the present. This rule rests upon both reason and authority. It is the dictate of a wise public policy, that of protecting the right of those lawfully using the public highways, to be unmenaced by dangers resulting from the condition of adjoining premises, or from what is being done for, or by permission of, the occupiers, on or about the same. These things, though known to such occupiers, cannot be known or appreciated by the users of the highways. Bodies are not expected to fall from the windows of buildings, upon the adjoining highways. Such happenings are not consistent with the usual and orderly conduct and ménage of such buildings.

The leading cases of Byrne v. Boadle, 2 H. & C. 722, and of Kearney v. London, Brighton & South Coast Railway Co., 6 Q. B. Cas. 759, have been followed by many other cases, both in England and in this country, and the applicability of the rule of evidence embodied in the maxim "res ipsa loquitur," to objects falling from buildings into a highway, is well established.

The jury, however, having found both the questions thus submitted, in favor of the plaintiff, the assignments of error, as to the charge of the court in regard to the defense of an independent contractor, are overruled, and the judgment below is hereby affirmed.