## THE W. D. ANDERSON.

### In re ATLANTIC REFINING CO.
#### No. 31 of 1935.

District Court, E. D. Pennsylvania.
Jan. 13, 1937.

Otto Wolff, Jr., of Philadelphia, Pa., for petitioner.

Herman Steerman, George F. Blewett, and Samuel B. Fortenbaugh, Jr., all of Philadelphia, Pa., Arthur L. Obre, of New York City, and Walter B. Gibbons, of Philadelphia, Pa., for claimants.

KIRKPATRICK, District Judge.

This is a proceeding in admiralty upon a petition for limitation of liability by the owner and operator of the oil tanker W. D. Anderson.

On June 7, 1934, at 5:10 p. m., while the vessel was in dry-dock at the plant of the Kensington Shipyard & Drydock Corporation undergoing repairs, an explosion occurred in the forepeak water ballast tank of the ship. Three men were killed and fifteen others injured, all of them be-ing employees of the Shipyard Corporation and engaged in work upon the ship. The petitioner claims exemption from liability upon the ground that the accident resulted solely from the negligence of an independent contractor.

The commissioner, appointed to hear, try, and decide the issue, has filed a very carefully considered report, finding the facts and concluding that the petitioner is under no legal liability to the claimants.

The facts need not be restated, except so far as necessary to an understanding of the question involved. As to certain facts, I differ somewhat from the commissioner and shall find them specially. As to all others, not inconsistent with such special findings, I affirm and adopt, as the findings of the court, the facts reported by the commissioner.

Several months before the accident, the W. D. Anderson sustained grounding damage, but continued in trade until it was determined to make the necessary repairs. She was delivered to the Shipyard Corporation during the morning of June 7 and had been in dry-dock some six or seven hours when the explosion occurred.

I. I agree with the commissioner that the Shipyard Corporation had been placed in complete control of the vessel prior to the accident and that it was, as to the repair work, an independent contractor within the ordinary meaning of that term. But the contract was in some respects unusual and must be examined in detail, particularly with regard to the division of responsibility for taking precautions against the presence of oil vapor in the vessel. The following special findings are therefore made:

First. The contract involved the doing of work which both parties knew, or should have known, was sure to be dangerous unless the forepeak compartment was entirely free from oil sediment which might volatilize as explosive gas vapor. The petitioner knew that work would be done upon the forepeak. Repairs to a tanker were nothing new to it, and it must have known that acetylene torches would be used.

Second. The petitioner, at the time of making the contract, impliedly represented that it had done the work of washing and steaming—an essential step in making it safe to do hot work—before the delivery of the vessel to the Shipyard Cor-

poration. The written memorandum, which contained some of the terms of the contract, provided that the contractor should do necessary steaming and cleaning, but that was nothing like the real agreement on this point, and no one seriously contends that it was. The real understanding as to the steaming and washing is made plain by the fact that the Shipyard Corporation allowed the petitioner a credit for doing it at the rate of $30 per compartment for steaming. This could only have been upon the basis of an understanding that the work had been done. The reason the fictitious term was included in the contract was that the petitioner could thus obtain reimbursement from the underwriters (without having to render a separate bill) for something which was recognized by all parties as a necessary part of the work and properly chargeable to the grounding damage.

■ Third. The contract was an oral contract. The papers drawn up and signed by the parties were not intended by them as a complete integration. There were oral terms. Then, too, the custom of seven years' standing by which the petitioner had regularly steamed, washed, and tested its vessels before it delivered them to the Shipyard Corporation for repairs was tacitly incorporated into the agreement or at least made a basis for it. It is not necessary, however, to detail the various circumstances surrounding the contract which lead to the conclusion that it was in fact oral (although I have no doubt upon the point) because, even if the contract were a written one, the parol evidence rule does not apply where the rights of third partise depend upon ascertaining the real contractual relationship of two other parties. Wigmore, § 2446.

Fourth. The actual obligation assumed by the contractor in respect of precautions for the safety of workmen was (a) to make a test to ascertain whether the vessel, after having been steamed, washed, and tested by the owner, was in fact gas free—in other words, to ascertain whether the work done by the petitioner had been properly done and to make certain that nothing new had occurred which required further precautions. (b) If this test revealed that the compartment was not safe and that more work had to be done, then and only then the duty of completing the job devolved upon the contractor. The petitioner would still be required to contribute, but

only to the extent of furnishing steam, at its expense, for further steaming. As a matter of fact, the petitioner kept some men aboard in order to keep steam up if it should be required. What additional washing was to be done the contractor was to do and, in addition, if the tanks required "cleaning" (giving that word the specialized meaning of loosening and removing oil adhering to the walls of the tank, which it apparently had for the parties), the contractor was to do that also.

■ II. I also agree with the commissioner that the law of Pennsylvania governs. In Silveus v. Grossman, 307 Pa. 272, 161 A. 362, the Pennsylvania Supreme Court wholly repudiated the doctrine of Bower v. Peate, 1 Q.B.Div. 321, to the effect that even an independent contract will not relieve the contractee of the duty of seeing to it that precautions necessary to make certain types of work safe are taken. The Pennsylvania court held that, whether the work is inherently dangerous or of a type from which danger may be expected to arise unless precautions are adopted to avert it, the contractee is not liable for the negligent act or omission of an independent contractor. The rule of the federal court for this circuit is otherwise (Doll & Sons v. Ribetti [C.C.A.] 203 F. 593), but with this we are not further concerned.

■ But the Pennsylvania rule has to do only with an injury which results solely from the negligence of the contractor, and when the injury is caused in whole or in part by the negligent act or omission of the contractee, the interposition of an independent contractor is no defense. "The rule exempting the contractee from liability for injuries resulting from the negligence of an independent contractor or his servants cannot be so extended as to relieve the contractee from liability for injuries caused by his own negligence, even though the contractor may also be negligent. * * * Where injuries are sustained by the servant of an independent contractor * * * by the combined fault of the contractor and the contractee, the contractee will be liable." 39 C.J. 1328, 1343, and cases cited.

■ III. Was the petitioner negligent and, if it was, did its negligence cause or contribute to the disaster?

First, as to the petitioner's duty to the injured workmen: With full knowledge that a large number of men would be work-

ing in and about it, the petitioner turned over its ship to their employer. If the case were the ordinary one and the contract the usual undertaking of an independent contractor, it may be conceded that the petitioner would have discharged its full duty to all third parties including these workmen when it selected a competent contractor; nor, in the ordinary case, would the mere fact that, before turning over the vessel, the petitioner had taken certain preliminary steps as a sort of extra precaution, impose any additional liability upon it. But this contract was not the usual one. The petitioner had undertaken an important part of the precautionary measures and represented to the contractor that it had completed it, receiving at the same time a credit for having done so. Then, by the contract, it limited the contractor's obligation, in the first instance, to checking or testing the work which the petitioner had done, and imposed further duties upon the contractor only in the event that the test indicated that something additional was required. In other words, the petitioner and the contractor elected to make the duty to the workmen of gas-freeing the forepeak a composite one, with the consequence that either might be held for neglect of its share.

Now, as to the petitioner's conduct in respect of its duty: There is an extremely important fact in the case which has not so far been referred to. The forepeak, where every one knew that the work of removing the plates would have to be done, was used only for water ballast or as a dry tank, and the presence of oil in it would not ordinarily be expected. But, upon one of this vessel's voyages some three months before the accident, a rivet between the forepeak and the forward cargo tank had fallen out and a considerable quantity of oil had leaked into the former. The rivet hole was plugged shortly after the leak was discovered, but oil or oily water to the depth of about an inch was allowed to remain in the forepeak and nothing done to remove it. The cement wash with which the forepeak tank was lined was capable of absorbing oil, cement having a great affinity for all types of oil. If this occurred, and it undoubtedly did, the film of oil so formed would not evaporate very rapidly in the unventilated tank.

On June 4, 1934, the W. D. Anderson put in at the Point Breeze Station of the petitioner to be prepared for dry-docking, and remained there three days, during which time the steaming and washing by the petitioner took place. It appears to have been done thoroughly enough upon the cargo oil tanks, but the washing of the forepeak was little more than perfunctory and I find that the petitioner's work in this respect was negligently done.

The forepeak tank was steamed in the same manner as the others, first for twenty to twenty-four hours, and again for ten to twelve hours. When it came to washing, however, the shore gang did nothing upon it. What washing it got consisted in the mate's reaching down through an aperture and playing a 1½-inch rubber hose upon the interior of the tank for ten or twelve minutes. He then instructed the pump man to pump out the forepeak. The pump was not working. The next morning the pump man reported that fact but nothing was done to remove the oily water.

Leaving the forepeak in this condition, the petitioner turned the vessel over to the Shipyard Corporation upon the terms which have already been reviewed. No one connected with the petitioner, no officer of the ship or of the company ever mentioned to any one connected with the Shipyard Corporation the fact that there had been a leakage of oil into the forepeak. Of course the petitioner knew that the forepeak would be included in the gas test which the Shipyard Corporation had agreed to make, although it was not specifically mentioned. But it also knew that whoever made the test would not be expecting to find oil in that particular compartment. Precedents are not easy to apply because the peculiar division of duties as to safety precautions between the contractee and the contractor make this case almost sui generis, but I am of the opinion that under the circumstances there was a duty upon the petitioner to disclose to the contractor the fact that there had been oil in the forepeak. As to its own failure to wash thoroughly and to remove the oily water, it owed the same duty of disclosure, but of course this duty was merged in the more important one of doing the job properly in the first instance. At both these points there was negligent omission upon the part of the petitioner.

IV. The condition responsible for the explosion, as the commissioner has found, lay in the presence of a film of oil upon the cement wash lining of the forepeak tank with, probably, larger quantities of oil pool-

ed behind the braces and ribs on the floor of the tank. This was vaporized when heat from the acetylene torches and from the hot rivets was applied; and the gradual introduction of air into the compartment through the increased number of rivet holes ultimately produced a mixture of oil vapor and oxygen which became highly explosive and did explode.

V. I affirm the commissioner's finding that the testing of the forepeak tank by the Shipyard Corporation's expert was negligently done and that the presence of oily sediment could and should have been easily detected there by him or by employees of the Shipyard Corporation. This requires a word upon the question of proximate cause.

If the injury was, even in part, the direct result of the petitioner's failure to perform a duty which it had assumed jointly with the contractee, as I am persuaded that it was, then, of course, the liability of both or either follows. If, however, it be looked on as the result of successive negligent omissions, the question of proximate cause would be met. The fault of the Shipyard Corporation was in point of time closer to the disaster than that of the petitioner. But the negligent omission of a third party, without which the injury would not have occurred, is not always regarded as the intrusion of an independent event, breaking the chain of causation and freeing the original wrongdoer from liability. Upon this point, the American Law Institute, Restatement of the Law of Torts (Negligence), says at section 302: "The actor is often required to anticipate and provide against that occasional negligence which is one of the ordinary incidents of human life and therefore to be anticipated, particularly if there is little or no utility in the creation of the situation and the harm likely to be done is something more than trivial."

In the present case there was a great deal more than merely the anticipation of possible negligence on the part of the Shipyard Corporation. In fact, it really seems as though the petitioner had done everything within its power to invite the error. It had undertaken to steam and wash the forepeak. When it turned the vessel over to the Shipyard Corporation, it may not have "guaranteed" that it was gas-free, but it certainly represented impliedly that the work had been done. As a matter of fact, it had been so carelessly performed that it might be said that it had not been done at all. True, the contractor was not supposed to rely upon the work done, but as human beings ordinarily think and act, it was to be anticipated that a reasonable belief that it had been properly done would have had some effect upon the thoroughness of its own part of the work. In addition, there was a special and unusual situation which made it necessary that the test be carried out with the utmost care and thoroughness, as to which the petitioner left the contractor in ignorance.

VI. In fixing the petitioner's responsibility for what might be called passive omissions, it is to be borne in mind that in all cases the duty of care is commensurate with the danger present. The greater the danger, the greater is the care required. 45 C.J. 696.

The present case is one in which the threatened danger did not merely involve damage to property or a possibility of slight injury to a single man. The petitioner must have understood perfectly well at all times that carelessness would result in a major disaster involving a number of lives. I do not think it is imposing any unreasonable duty upon it to say that, as to the part of the work of making the job safe which it had voluntarily assumed, it was bound to do it with reasonable care and that, as to the part which it had delegated to another, it was bound not to withhold knowledge which was highly important to the proper performance of such delegated work.

VII. I therefore find that the injuries to the claimants were the result of negligence on the part of the petitioner.

The claimant's thirty-fourth, fifty-second, fifty-third, fifty-fourth, sixty-third, and sixty-fourth exceptions are sustained. The other exceptions need not be passed upon, as their subject-matter is covered by the findings and conclusions contained in this opinion.

The statements of fact contained in this opinion may be taken as special findings of fact and the statements of law may be taken as conclusions of law.

Decree accordingly.