66 N.J. Super. 30 (1961)
168 A.2d 437
JOSEPH ROMMELL, PLAINTIFF-RESPONDENT,
v.
UNITED STATES STEEL CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
UNITED STATES STEEL CORPORATION, A CORPORATION OF NEW JERSEY, THIRD-PARTY PLAINTIFF-APPELLANT,
v.
COMMERCIAL CONTRACTING CORPORATION, A FOREIGN CORPORATION, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1960.
Reargued February 6, 1961.
Decided February 24, 1961.
*33 Before Judges GOLDMANN, FREUND and KILKENNY.
*34 Mr. Burtis W. Horner argued the cause for defendant-appellant and third-party plaintiff-appellant United States Steel Corporation (Messrs. Stryker, Tams & Horner, attorneys).
Mr. Richard J.S. Barlow, Jr. argued the cause for third-party defendant-respondent Commercial Contracting Corporation (Messrs. Lenox, Giordano and Lenox, attorneys).
Mr. Harry Lane, Jr. argued the cause for plaintiff-respondent.
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff Rommell, an employee of Commercial Contracting Corporation, hereinafter referred to as "Commercial," sued defendant United States Steel Corporation, hereinafter referred to as "Steel," in the Superior Court, Law Division, Mercer County, claiming that he was injured through Steel's negligence while he was working for Commercial at Steel's plant in Fairless Hills, Pennsylvania.
In Rommell's action, defendant Steel, as a third-party plaintiff, joined Commercial as a third-party defendant, contending that if Steel were found liable to Rommell, then Commercial would be liable to Steel by virtue of certain provisions of the written contract entered into between Steel and Commercial on August 19, 1957. By this contract Commercial had agreed to install a Number 2 shear line in one of Steel's buildings at Fairless Hills aforesaid.
There was a jury trial which resulted in a $75,000 verdict in favor of the plaintiff and against Steel alone. The trial court dismissed Steel's third-party suit against Commercial, without any submission thereof to the jury, on the ground that Commercial could not be liable to Steel under their contract if the jury found that Steel's negligence alone, or in combination with any negligence attributable to Commercial, resulted in the injuries suffered by Rommell. Thus, *35 the case was given to the jury to resolve only the issues of Steel's alleged negligence, regardless of whether it was sole or concurring, active or passive, and the contributory negligence, if any, of Rommell, and damages.
Steel moved for a new trial on the grounds that the entire verdict was against the weight of the evidence, was excessive, and because of the trial court's refusal to submit to the jury certain specific interrogatories as to Commercial's negligence and liability under the contract, which Steel requested the trial court to submit. The trial judge denied Steel's motion for a new trial and upheld his dismissal of Steel's third-party action, but found that the $75,000 verdict in Rommell's favor was "excessive as the result of mistake." The trial judge then said:
"I should [sic] reduce the verdict to the sum of $40,000 with the proviso that if the plaintiff and defendant Steel can agree that reduced amount is an acceptable amount, they may do so. * * * If, however, the parties plaintiff and original defendant cannot agree on the amount of $40,000, then when you so inform me, I will arrange for a new trial on damages and damages only."
We observe at the outset that this form of remittitur is improper. When a trial court regards the verdict as sufficiently excessive to warrant reduction, it should in such case state that, unless plaintiff is willing to take the suggested reduced amount, the verdict will be set aside as to damages. The order should not be made contingent upon defendant's willingness to pay the reduced amount. Marty v. Erie R. Co., 62 N.J. Super. 458, 461, 467 (App. Div. 1960), certification denied 33 N.J. 387 (1960). Since the $40,000 sum was not acceptable to Steel, though it was acceptable to Rommell, the court, taking the improper view of the remittitur, set aside the verdict as to damages and ordered a new trial as to damages only.
The judgment was made final as to the dismissal of the third-party action, pursuant to R.R. 4:55-2, thus giving Steel the right to appeal therefrom, even though *36 there has not yet been a retrial on damages of the original action by Rommell against Steel.
In its appeal from the trial court's judgment Steel alleges errors in the conduct of the trial, asserts abuse of discretion in the trial court's failure to set aside the $75,000 in its entirety, and contends that the trial court's construction of the contract between Steel and Commercial, by which it concluded that Commercial was not liable thereunder to Steel on the facts of this case, was erroneous.
It is agreed by the parties that any conflicts between New Jersey and Pennsylvania law will be resolved by applying Pennsylvania law, since the accident occurred in Pennsylvania, and the contract between Steel and Commercial was executed and performable in Pennsylvania.
Rommell was injured on December 18, 1957, while working for Commercial on Steel's property. Rommell, his foreman, and three other members of his work gang, were engaged in moving steel plates, about 8' x 10' in dimensions, weighing about 4,800 pounds each. The plates were suspended from a truck, called a fork lift, or "cherry picker," by means of cables with hooks attached to the end of them. The hooks were inserted into holes in the steel plates which were being moved. The plates were carried at a height of 8 to 14 inches from the floor or ground. While moving a particular plate, with the plaintiff and three other men guiding the plate at each of its corners, the fork lift was stopped in order that two ram tractors of Steel could pass by. The contract gave Steel priority of movement. At this moment the plate was suspended over the existing and apparently embedded floor plates in the Number 1 shear line. Steel's ram tractors moved across the floor plates in passing Commercial's fork lift. Steel's first ram tractor went across without incident. There was testimony that when its second ram tractor traversed the floor plates, one plate, evidently loose, bounced up from the ground and struck the plate suspended from Commercial's fork lift. One of the hooks gave way and the suspended plate fell on Rommell's left foot, resulting in the *37 loss of portions of all of his toes, on that foot, although he had lost one joint on his second toe in a prior accident. For this injury and his consequential damages, Rommell sued Steel and obtained the jury verdict aforesaid.
There was evidence in this case that Commercial had agreed in paragraph 16 of its contract with Steel that the safety of all persons employed by Commercial on Steel's premises would be the sole responsibility of Commercial, and that Commercial would take all measures and precautions to prevent injuries to its employees; that Commercial had inspected the site where the work was to be performed, and was aware of the conditions at the site; that Commercial's employees had been engaged in installing the Number 2 shear line from August 19, 1957 to December 18, 1957, the day plaintiff sustained his injuries; that Commercial's contract was to be carried out on the west side of the building and the Number 1 shear line on the east side was in operation during the entire period; that each of Commercial's employees was aware of the existence of the operation of the Number 1 line across the short distance of the wooden block truck aisle from the site of the work; and that Commercial's employees had observed the action of the loose floor plate when traversed by Steel's ram tractors on many occasions prior to the date of Rommell's injuries. While Rommell stated that he had never seen Steel's vehicles pass over the conveyor line, he did admit that he had seen these plates "flip." Other Commercial employees stated that they saw the plates move two or three times each week.
There was proof at the trial from which the jury could find that Commercial was negligent, and that its negligence may have at least concurred causatively in the happening of the accident. The hooks which held the suspended plate were made by one of Commercial's employees, by bending ordinary bar stock under heat. Steel's expert described the hook as one he would "not prefer"; that the notching condition caused by the bending of this bar stock was "detrimental," though he would not state to what degree. The *38 jury could find that one of the hooks holding the plate was defective. Besides, Steel predicated its contention as to Commercial's negligence on Commercial's duty to keep its employees away from the obvious danger resulting from conducting operations in such close proximity to the passage of Steel's ram tractors on the Number 1 line; on Commercial's failure to use suitable guiding devices so that the plaintiff and his co-workers would not be obliged to remain alongside the carried plate; and the carrying of the plate so low that an existing floor plate, whose tilting characteristics were so well known, might strike it.
The trial court ruled that if Steel was found to be negligent, then Commercial's concurring negligence, if any, would not relieve Steel from the obligation to pay Rommell, and would not entitle Steel to any relief under the contract against Commercial. Therefore, the trial court refused to allow the jury to consider Commercial's alleged negligence, denied Steel's specific written questions aimed at eliciting special findings by the jury as to whether the accident was due to the sole negligence of Steel or of Commercial, or the concurring negligence of Steel and Commercial, and dismissed Steel's third-party action. In brief, the trial court reasoned that any negligence by Steel, sole or concurring, active or passive, entitled Rommell to a recovery, unless he was contributorily negligent; and any negligence by Steel, active or passive, disentitled Steel to any recovery against Commercial, regardless of their contract, and even though Commercial's negligence, active or passive, may have concurred in causing the accident.
Assuming that Steel was negligent, as the jury evidently found, we cannot tell from its general verdict whether it found Steel solely negligent or concurrently negligent with Commercial. The court's refusal of Steel's requests for special findings as to sole and concurring negligence has resulted in this factor's being unknown. While Steel's negligence, sole or concurring, active or passive, may make it liable to Rommell, absent his contributory negligence, did *39 the trial court properly determine Commercial's non-liability under their contract without a finding of whether Commercial was negligent, or breached its duties under the contract?
Before examining, and without regard to, the contract provisions upon which Steel relies, we make these observations as to Pennsylvania law. The employee's remedy against his employer is limited exclusively to the benefits of that state's workmen's compensation statute. If the employee sues a third party in tort in the law courts for negligence, that third party may join the employer, as a third-party defendant, charging the employer with negligence, for the purpose of obtaining contribution from the employer limited to the sum the employer would be obligated to pay his employee under Pennsylvania's Workmen's Compensation Act, 77 P.S. § 1 et seq.
Therefore, if the third-party tortfeasor's negligence and the employer's negligence combined in causing the employee's injuries, the third-party tortfeasor's right of contribution against the employer is limited to the employer's liability to pay workmen's compensation benefits. Brown v. Dickey, 397 Pa. 454, 155 A.2d 836 (Sup. Ct. 1959); Socha v. Metz, 385 Pa. 632, 123 A.2d 837 (Sup. Ct. 1956); Shaull v. A.S. Beck New York Shoe Co., 369 Pa. 112, 85 A.2d 698 (Sup. Ct. 1952).
However, Steel has not proceeded on this theory of contribution between joint tortfeasors, and does not seek this limited contribution from Commercial, but argues for total payment by Commercial of Rommell's claim, asserting the contract between Steel and Commercial so requires. Further, the limited contribution rule noted in the above cases was never presented to the trial court. If it had been, at least as an alternative remedy, it would have been incumbent upon the trial judge to obtain the desired special findings as a basis for determining Steel's rights against Commercial, in view of the above Pennsylvania decisions.
Steel relies particularly on paragraphs 6, 13, 15 and 16 of the contract between it and Commercial to support its *40 argument that Commercial is liable to pay any claim, liability or judgment against Steel by any of Commercial's employees, including plaintiff Rommell.
Paragraph 6 gives Steel the right to retain moneys in its possession and due Commercial under the contract for any loss it sustains by Commercial's default or breach of the contract, or by reason of any other claims it may have against Commercial, whether or not arising out of this contract. Steel asserted a right to retain $20,900 due Commercial, when it filed its third-party complaint, alleging Commercial's default in safeguarding its employees and observing the duties of care specified in the contract. Hence, paragraph 6 applies only to the retained $20,900, and depends for its efficacy upon a finding of Commercial's breach of contract, or a valid claim by Steel, whether or not arising out of their contract. How could such a finding of default or breach of contract by Commercial, or other claim not arising out of their contract, such as Steel's right against Commercial for contribution under Pennsylvania's Workmen's Compensation Act because of Commercial's negligence, be made, if the trial court precluded the jury from making the necessary fact findings? The fourth count of Steel's third-party complaint pleaded paragraph 6 of the contract, and in subdivision (d) of the demand for judgment Steel requested a determination of its right to withhold the $20,900 and apply it in defending Rommell's action.
Paragraph 13 has no applicability here. By it Commercial agreed to save Steel harmless from possible claims against Steel by Commercial's employees, resulting from Commercial's failure to comply with the state workmen's compensation and unemployment compensation laws. There is nothing in the record showing any such noncompliance by Commercial, or that Steel has been subjected to any liability under those state laws.
Paragraph 15 is also lacking in relevancy. By it the "Contractor," Commercial, irrevocably waived any rights to *41 file liens or charges against the "Owner," Steel, or its property. The paragraph also provided:
"Contractor shall also pay, satisfy and discharge all mechanics', materialmen's and other liens, and all claims, obligations and liabilities which may be asserted against Owner or its property by reason of or as a result of any acts or omissions of Contractor, his employees, representatives, licensees or suppliers, or his subcontractors, or the employees or suppliers of his subcontractors, in connection with or relating to the performance of this contract."
In this case Commercial is not asserting or filing any lien or charge against Steel or its property. There is no question concerning mechanics', materialmen's or other liens. And the claim of liability being asserted against the owner, Steel, by Rommell was based on Steel's own alleged negligence, and not on any acts or omissions of Commercial or its employees. Hence, paragraph 15 is inapplicable here.
Paragraph 16 of the contract is pertinent. It provides, inter alia, that "the safety of all persons employed by Contractor * * * on Owner's premises shall be the sole responsibility of Contractor"; that the "Contractor shall at all times maintain good order among his employees and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him"; that the "Contractor shall take all reasonable measures and precautions at all times to prevent injuries to * * * any of his employees or any other person who enters upon Owner's premises"; that these measures and precautions "shall include * * * all safeguards and warnings necessary to protect workmen * * * against any conditions on Owner's premises which could be dangerous and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities, whether * * * the property of or being operated by the Contractor * * * the Owner or other persons." (Italics ours.)
This paragraph imposed certain contractual duties upon Commercial, for the breach of which Steel had a cause of *42 action against Commercial. Steel set forth its claim against Commercial under this paragraph in the third count of its third-party complaint. There was evidence before the jury from which it could find that Commercial violated the duties required of it under paragraph 16. It was, therefore, improper for the trial court to dismiss Steel's third-party action and to reject Steel's requests for special findings. These findings could establish Commercial's breach of contract by failure to perform its contractual duties.
We do not regard paragraph 16 as a covenant, express or implied, by Commercial to indemnify Steel. Such indemnification agreements to protect an owner against claims by the contractor's employees for injuries sustained by them while working for the contractor upon the owner's premises are commonplace. They may be worded so broadly and clearly as to provide for absolute indemnification of the owner, even though the owner's negligence, sole or concurring, active or passive, caused injury to the contractor's employee. See Cozzi v. Owens Corning Fiber Glass Corp., 59 N.J. Super. 570 (Cty. D. Ct. 1960), affirmed 63 N.J. Super. 117 (App. Div. 1960); Stern v. Larocca, 49 N.J. Super. 496 (App. Div. 1958); George A. Fuller Co. v. Fischbach & Moore, Inc., 7 A.D.2d 33, 180 N.Y.S.2d 589 (App. Div. 1958).
But the words customarily employed to express an indemnity agreement are absent here. Commercial did not agree to "indemnify" Steel, or to "save it harmless," or "reimburse" it for loss sustained. Commercial did not undertake expressly or impliedly to pay for damages caused by Steel's negligence, sole or concurring. Contrast the glaring absence of such significant language, ordinarily used to evidence an intent to indemnify, in paragraph 16 with the obvious presence of such pertinent words, clearly indicative of an agreement to indemnify, in paragraphs 13, 14, 18 and 19 of the same contract dealing with other factors.
As pointed out by our own court in Cross v. Robert E. Lamb, Inc., 60 N.J. Super. 53 (App. Div. 1960), under *43 Pennsylvania law the "strict construction" rule requires that an indemnitee's protection against the consequences of his own negligence must be clearly and unequivocally expressed in the agreement, and any ambiguities must be resolved against coverage. Reference may be had to the Cross decision, page 68, for a list of the Pennsylvania cases supporting that conclusion. In the Cross case the jury found that the indemnitee was negligent and that the indemnitor was free from negligence in causing the injuries to the indemnitor's employee. There was an express indemnity provision to "indemnify, save harmless and defend" the indemnitee "from all liability for loss, damage, or injury to persons or property in any manner arising out of or incident to this order." Not only did our court dismiss the indemnitee's third-party complaint because the accident was due to its sole negligence, but it declared by way of dictum, at page 68, "It is doubtful whether under these [Pennsylvania] authorities recovery would be allowed the indemnitee in Pennsylvania even in a case of concurrent negligence of indemnitee and indemnitor."
Steel relies upon our decision in Stern v. Larocca, 49 N.J. Super. 496 (App. Div. 1958). However, the instant case must be decided on the basis of Pennsylvania law. Further, even the Stern case recognizes the unlikelihood of recovery by an indemnitee whose active negligence is the sole cause of the injury sued for, in the absence of a clear and unequivocal provision covering the indemnitee's negligence.
In Pennsylvania, as in New Jersey, one may validly contract for indemnity against his own negligence, provided the intention to do so is clearly expressed. Tidewater Field Warehouses v. Fred Whitaker Co., 370 Pa. 538, 88 A.2d 796 (Sup. Ct. 1952); Siegel Co. v. Philadelphia Record Co., 348 Pa. 245, 35 A.2d 408 (Sup. Ct. 1944); Cozzi v. Corning Fiber Glass Corp., supra. But in the case before us, we find no such clear and unequivocal expression to indemnify Steel from the consequences of its own sole or concurring negligence.
Steel contended further that its contractual relationship *44 with Commercial gave rise to an implied obligation by the latter to use due care and that, therefore, an implied contract of indemnity existed between the parties which requires Commercial to pay the full amount of any judgment obtained by Rommell. Pennsylvania law does not support such a contention. Steel's argument is fallacious, because it fails to draw the distinction between primary and secondary liability correctly noted in the Pennsylvania decisions.
In explaining "implied indemnity," it was said in Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319 (Sup. Ct. 1951):
"* * * There is of course, a fundamental difference between indemnity and contribution. The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence * * *. It depends on a difference in the character of the legal obligation owed by each of the wrongdoers to the injured person. * * *
* * * It is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only * * *.
* * * The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury."
Although the Builders Supply case, supra, apparently involved Ohio law, its statement of law has been approved and adopted in Pennsylvania Ry. Co. v. Sun Oil Co., 383 Pa. 537, 119 A.2d 221 (Sup. Ct. 1956), decided under Pennsylvania law. See also Muldowney v. Middleman, 176 Pa. Super. 75, 107 A.2d 173 (Super. Ct. 1954).
*45 New Jersey law is in accord on this matter of "implied" indemnity. In Public Service Electric & Gas Co. v. Waldroup, 38 N.J. Super. 419 (App. Div. 1955), the court refused to find an implied promise of indemnity against the employer, as was claimed by the third-party, where the only relationship between the parties was that of joint tortfeasors. As it stated, at page 432,
"It will be observed that the right of indemnity is granted only to those whose liability is secondary and not primary, i.e., whose negligence is not morally culpable but is merely constructive, technical, imputed or vicarious."
It cautioned, however, at page 436:
"In determining this question we are not concerned with the right to indemnity when the obligation arises by reason of an express contractual relationship."
Manifestly, the basis of Rommell's suit against Steel was Steel's own fault or neglect and not that Steel was secondarily or vicariously liable for Commercial's negligence. The rule is that even if an independent contractor assumes to take adequate precautions in doing his work, the owner is not relieved of his duty to the injured person for the owner's failure to take the necessary precautions to keep his premises safe. Restatement of Torts, sec. 416, p. 1127, comment (b). It was held in The W.D. Anderson, 17 F. Supp. 754, 756 (D.C.E.D. Pa. 1937), that under Pennsylvania law the contractee, by pleading that the work was being done by an independent contractor, cannot avoid liability to the contractor's employee for injury caused wholly or partly by the contractee's negligence. Steel's liability to Rommell remains primary, thus preventing the doctrine of implied indemnity from coming into play.
Accordingly, we hold that Steel may not recover from Commercial on the basis of an express indemnity agreement, because of the lack of any clear and unequivocal promise by Commercial to pay for Steel's negligence. We also conclude that Steel may not recover on the theory of an implied right *46 of indemnity, because Steel's alleged negligence, as asserted by Rommell, is primary and not merely secondary.
But without regard to indemnity, there is a possible basis for a jury to find liability on the part of Commercial in Steel's charge that Commercial has breached its contractual duties under paragraph 16 to the damage of Steel. Commercial's contractual obligation to be responsible for the safety of its employees and to provide safeguards and warnings of dangerous conditions to protect its workmen is not necessarily equivalent to an agreement by it to indemnify Steel for liability occasioned by Steel's own negligence, sole or concurring. But breach of this contract can give rise to a cause of action. Hence, indemnity for liability incurred by the indemnitee due to his own fault and damages for breach of contractual duties must be clearly distinguished.
The difference between the two types of agreement may be noted in applying the measure of damages recoverable in each instance. If Commercial's agreement with Steel were one of indemnity, then Commercial would be obliged to pay in full to Steel whatever Steel is obliged to pay to Rommell. Thus, the whole loss would fall ultimately on Commercial. However, if it were found that Commercial merely breached its duties under paragraph 16, it would not necessarily follow that the damages for such a breach would be equal to those recovered by Rommell against Steel. After all, Rommell may recover from Steel all his damages even though they were due to the combined negligence of Steel and Commercial's breach of contract.
In awarding damages for breach of contract, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury. 1 Restatement of Contracts, sec. 330. In Emerman v. Baldwin, 186 Pa. *47 Super. 561, 142 A.2d 440, at page 447 (Super. Ct. 1958), the court said:
"Generally speaking, the measure of damages applicable in a case of breach of contract is that the aggrieved party should be placed as nearly as possible in the same position he would have occupied had there been no breach."
While appreciating that there may be some difficulty in separating the damages caused by Commercial's breach of contract from those caused by Steel's negligence, the mere difficulty should not prevent Steel from recovering for breach of contract. See McAllister v. Pennsylvania R. Co., 324 Pa. 65, 187 A. 415 (Sup. Ct. 1936). In jurisdictions where the comparative negligence doctrine is employed to diminish, rather than extinguish, a plaintiff's cause of action because of his contributory negligence, juries are constantly called upon to determine the percentage of plaintiff's negligence in order to diminish the recovery pro tanto. Where such percentage cannot be arrived at, the diminution is fixed at 50% of recovery. See Fitzpatrick v. International Ry. Co., 252 N.Y. 127, 169 N.E. 112, 68 A.L.R. 801 (Ct. App. 1929).
We conclude that the failure of the trial court to direct the jury to make special findings of fact, pursuant to R.R. 4:50-1, or to submit interrogatories to be answered along with the general verdict, pursuant to R.R. 4:50-2, precluded knowledge of the jury's conclusions as to the respective negligence of Steel and Commercial, or the latter's alleged breach of contract. Without such findings this court cannot decide Steel's rights against Commercial under their contract. Accordingly, a new trial becomes necessary. At the retrial an appropriate set of interrogatories can be submitted to the jury to determine whether Rommell's injuries were due to the sole negligence of Steel, or the concurring negligence of Steel and the contractual breach of Commercial and, if the latter, the damage resulting to Steel from Commercial's breach of contract.
*48 Steel made a motion before the Appellate Division for leave to appeal the trial court's order limiting the new trial of the plaintiff against Steel to the issue of damages only. But this motion was denied. Accordingly, on Steel's appeal of right from the judgment made final, dismissing its third-party action against Commercial, only the attorneys for Steel and Commercial filed briefs and made oral arguments. The plaintiff did not appear when the matter was first argued before us.
In our study of the case, we deemed it in the interest of justice and conducive to an avoidance of fragmentized appeals to reconsider the previous denial of Steel's aforesaid motion for leave to appeal. On our own motion, we granted Steel leave to appeal from the order limiting the new trial to damages only. All parties were notified of this decision. They submitted further briefs as requested and their attorneys attended at the reargument. Particular attention was directed upon the reargument to the question whether a new trial of plaintiff's suit against Steel should be confined to the issue of damages.
It is well established that a trial court, in ordering a new trial because of the inadequacy or excessiveness of the verdict, may in its sound discretion limit the new trial to damages only. The cases point out that such a limitation should be exercised sparingly and with great caution, and only when it is clear that the issues of liability and damage are readily separable, and the erroneous determination by the jury was as to the damages only. Gaffney v. Illingsworth, 90 N.J.L. 490, 491 (E. & A. 1917); Robinson v. Payne, 99 N.J.L. 135, 137 (E. & A. 1923); Esposito v. Lazar, 2 N.J. 257, 259 (1949); Dahle v. Goodheer, 38 N.J. Super. 210 (App. Div. 1955), certification denied 20 N.J. 534 (1956); Marty v. Erie R.R. Co., 62 N.J. Super. 458 (App. Div. 1960), certification denied 33 N.J. 387 (1960). Such exercise of discretion by the trial court should not be disturbed by an appellate court, except where the interests of justice manifestly so require.
*49 Where a verdict is grossly and obviously inadequate and the question of liability was close, there is a strong suspicion that the jury's determination of liability was a compromise in consideration of the reduced damage award. Such compromise verdicts are invariably set aside and a new trial should be directed as to all issues. Hartpence v. Grouleff, 15 N.J. 545 (1954); Coll v. Sherry, 29 N.J. 166 (1959); Dahle v. Goodheer, supra. The theory of "compromise" verdicts is logically inappropriate where the verdict is grossly excessive. Jurors do not normally indulge an excess of liberality where they are troubled by close questions of liability. When so troubled, the jurors are more apt, in order to salve their consciences, to reduce the verdict rather than increase it. The excessive verdict suggests that it was a product of mistake, partiality, passion, or prejudice. Then, the crucial inquiry in each instance is whether the taint permeated the whole verdict or only the quantum of damages.
In this case, the verdict of $75,000 for plaintiff's injuries and consequential damages was grossly and obviously excessive. Its excessiveness evidences that it was the product of mistake, partiality, prejudice or passion, either separately or in combination. The trial court characterized it as "excessive as the result of mistake," and reduced the verdict to $40,000, thereby cutting it almost in half. The trial judge tried in good faith to have the plaintiff and Steel mutually agree upon that reduced figure to close out the matter between them and thus avoid an appeal as to them. The plaintiff was then willing to accept the $40,000, and his attorney reaffirmed that willingness at the reargument, thus demonstrating plaintiff's recognition of the verdict's substantial excessiveness. Naturally, Steel regards the $75,000 verdict as excessive and even deems the reduced figure too high. Steel would not agree to pay the $40,000.
The issue of Steel's liability was not so clear and unmistakable as to warrant the inference that the jury erred only in its assessment of the damages. Steel's contention that *50 the fault was Commercial's may have been substantially dissipated in the minds of the jurors by the trial court's dismissal of the action against Commercial. A jury, possibly unmindful of the plaintiff's right against Commercial for the benefits under the Workmen's Compensation Law, may have erroneously reasoned that, unless liability was placed upon Steel, the unfortunate plaintiff, who suffered the loss of toes on one foot, would go remediless. It is easy to conceive how, under the circumstances, a jury, so clearly wrong on the quantum of damages, could improperly resolve the issue of liability through mistake or sympathy.
In Marty v. Erie R. Co., supra, an award of $22,500 to an employee who sustained a skull fracture was reduced by the trial court to $15,000. This court reversed the judgment and ordered a new trial on all issues. A study of the entire record in Marty led to the conclusion that the verdict was not only excessive, as indicated by the reduction of $7,500, one-third the amount of the award, but was also the result of mistake, partiality or prejudice. In the analogous situation now before us, where the reduction has been even greater than in Marty, we are likewise convinced that the verdict was the result of mistake, partiality or prejudice. R.R. 1:5-3(a); R.R. 2:5. We deem applicable here what this court said in the Marty case:
"The amount of the verdict * * * indicates that the jury was improperly motivated in reaching the verdict it did, and that the trial court abused its discretion in not granting a new trial [as to all issues]."
The judgment dismissing Steel's third-party action against Commercial is reversed and that matter is remanded for a new trial. The order limiting the new trial of plaintiff against Steel to damages only is reversed, and that action is remanded for a new trial on the issue of liability as well as damages.