## Phillips' Administrator v. Tway.

(Decided May 7, 1937.)

584

IRVING WALKER and BENJ. F. GARDNER for appellant.

JOSEPH B. EVERHART and SELLIGMAN, GOLDSMITH, EVERHART & GREENEBAUM for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

The appellee, R. C. Tway, owns and operates a dairy in Jefferson county employing from thirty-five to fifty men. A number of the men lived on the farm in a boarding house where rooms and meals were provided. One Minor Sharp was employed by Tway as a night watchman on the farm and lived in the boarding house. The proof shows that Sharp was on duty for his employer from 6 o'clock in the evening to 5:30 or 6 o'clock the following morning. While he usually slept at the boarding house in the daytime and had occasionally performed services for his employer during the day, there can be no question from the record before us but that his duties as an employee were limited to the nighttime.

On May 3, 1934, appellant's decedent, Harvey Phillips, left his employment in the creamery plant and did not thereafter return to work. On May 5, 1934, between 8 and 9 o'clock in the morning Phillips returned to the farm for the purpose of getting his clothes. He went to the superintendent of the creamery and asked permission to get his clothing from the boarding house where he had lived. One witness testified that before going to the boarding house Phillips remarked that before he left the place "he might want to beat something out of Minor." Deceased left the creamery and went to the boarding house for the ostensible purpose of getting his clothes. Sharp lived at the boarding house and was there. So far as the record shows, no one else was present, and the first indication of any trouble was when shots were heard and a glass door was broken.

There is nothing to show what caused or led up to the fight. There was testimony that Sharp had bruises about his face and had received a cut on his arm at the time when the witnesses arrived following the sound of shooting. One witness says that on looking through the glass door he saw Phillips and Sharp struggling in the dining room of the boarding house. Sharp had a revolver in his right hand, and after he and Phillips passed the door witness heard several shots fired in quick succession. The colored cook in the boarding house says that he heard a shot and rushed into the dining room. He saw Phillips fall, and Sharp fired two more shots, which went wide of their mark. He then shot again, and this shot hit Phillips in the head. Apparently, it was this last shot which caused his death. There is no testimony of any character heard or offered which would indicate that Sharp was acting or performing any service for his master whether within or without the scope of his employment at the time of the homicide.

This suit was filed by the administrator of Harvey Phillips to recover damages from Mr. Tway for the alleged wrongful killing of decedent. The liability of the appellee is sought to be predicated upon his negligence in employing Sharp, who, it was claimed, was of a "morose, excitable, overbearing, and dangerous disposition and temperament and the said facts were known to the defendant Tway, or could have become known to him by the exercise of reasonable and ordinary care." It was likewise alleged that Sharp undertook to eject Phillips from the premises, but no evidence whatever was offered on this score. The trial court directed the jury to return a verdict in favor of the defendant at the close of the plaintiff's testimony. Complaining of this ruling, this appeal has been prosecuted.

At the outset, we are confronted by the fact that the record is devoid of any testimony from which the cause of the difficulty between Sharp and Phillips can be determined. There is not one word of proof to show what transpired between the time when Phillips went into the boarding house and some ten or fifteen minutes later, when he was seen fighting with Sharp. We cannot presume that one party or the other precipitated the fight or that Sharp was entirely to blame and Phillips in no way to blame. Conceding for the purposes of argument that Mr. Tway was negligent in employing

a man of Sharp's alleged temperament, there is nothing from which we could infer that such negligence brought on the difficulty or was the proximate cause of Phillips' death. Sharp might have been as vicious as appellant says he was and yet have been in no way to blame for this particular affair.

It is argued for appellant that the shooting of Phillips raised a presumption that Sharp was incompetent to fill the position of watchman. Appellant seeks from this premise to raise a presumption of negligence, not against Sharp, but against Mr. Tway. Clearly, the only negligence relied on, or which well could be relied on, against Mr. Tway would be his failure to discharge Sharp after notice of his dangerous character. He could not be said to have had notice of the very act which is here urged as a basis of recovery in time to have done anything about it.

It is next argued that the court erred in failing to admit evidence showing specific acts of Sharp and threats made by him which indicated that he was incompetent, of violent temper, and overbearing to other employees. The only evidence of this character to which appellant refers in his brief was put in the record by way of avowal to the effect "that this fellow Sharp was overbearing to him and insulting in the dining room and they had a serious argument practically over nothing, because that was the temper and disposition of this man Minor Sharp who was the watchman." Obviously, this was nothing more than a statement of the witness' opinion of Sharp and his conclusion drawn from facts not before the jury. A statement of the facts giving rise to the quarrel might have resulted in a very different conclusion on the part of the jury from that of the witness as to the temper and disposition of Sharp. There is no fact advanced in this testimony from which it might be inferred that Sharp was of such a dangerous temperament as to make it negligence to employ or to retain him as a watchman. It is not even shown whether the alleged quarrel occurred within a reasonable period before the accident, or, indeed, that it might not have happened later.

Finally, it is argued that the court erred in excluding evidence of specific acts by Sharp during the daytime which indicated that his duties did not end at 6 o'clock in the morning. While none of the evidence so

excluded by the court seems to us to show any duty on the part of Sharp after 6 o'clock in the morning, and, taken at its greatest value, does nothing more than indicate that on several occasions Sharp performed various acts on behalf of his employer not connected with his duties as night watchman, we are still confronted by the proposition that the evidence fails in any way to show that Sharp was acting on behalf of his employer when he shot and killed Harvey Phillips. The mere fact that Harvey Phillips was shot while on the appellee's premises, or the fact that he was shot by a night watchman who also had duties in the daytime, raises no presumption on the facts here presented that this was anything other than a private fight between Sharp and Phillips. Ballard's Adm'x v. Louisville & Nashville Railroad Company, 128 Ky. 826, 110 S. W. 296, 33 Ky. Law Rep. 301, 16 L. R. A. (N. S.) 1052. We cannot infer that it arose from one cause any more than another. Phillips may have been entirely the aggressor. He may not. The burden was on the appellant to prove his case. He has omitted an essential link in his failure to show the cause of the fight or any connection between the alleged negligence of the appellee and the death of his decedent. Carlson v. Connecticut Company, 94 Conn. 131, 108 A. 531, 8 A. L. R. 569 and note.

Judgment affirmed.