**Thedio NIVINS and Mary Nivins, his wife, Plaintiffs,**

v.

**SIEVERS HAULING CORP., and Sievers Rental Company, Inc., Defendants.**

**SIEVERS, INC., Third-Party Plaintiff,**

v.

**McKINNEY DRILLING COMPANY, and International Union of Operating Engineers, Local 825, 825A, 825B, 825C & 825D, Third-Party Defendants.**

**Civ. A. No. 74–1049.**

United States District Court,
D. New Jersey.

Dec. 16, 1976.

Jamieson, McCardell, Moore, Peskin & Spicer by Randolph D. Norris, Trenton, N. J., for defendant-third-party plaintiff.

Schneider, Cohen & Solomon by Bruce Brafman, Jersey City, N. J., for third-party defendant International Union of Operating Engineers.

## OPINION

CLARKSON S. FISHER, District Judge.

This matter comes before this Court on third-party defendant's motion for summary judgment pursuant to F.R.Civ.P. 56. The action was instituted by the plaintiff who was injured in a crane accident; the equipment being owned by the defendant, Sievers Hauling Corporation.[1] Plaintiff's complaint alleges that Sievers' employees were negligent, careless and reckless in their operation of the crane, thus making the employer vicariously liable under the doctrine of respondeat superior. Plaintiff further alleges that the defendant Sievers was negligent in hiring "incompetent and unfit" employees to operate the crane. (Plaintiff's Complaint ¶¶ 5, 6). The defendant Sievers is in the business of renting construction equipment to construction firms, but has no operators of heavy equipment in its direct employ. (L. Siever's dep. p. 33). Sievers does have a contractual arrangement with Local 825 of the International Union of Operating Engineers (hereinafter referred to as "union") whereby the defendant-third-party plaintiff will call the union hiring hall whenever it needs employees for a particular job. Such employees are usually sent along with the equipment to a construction site. Sievers has named the union as a third-party defendant in this action claiming that if the jury finds for the plaintiff regarding the incompetency of the employee operators, the union must indemnify the defendant-third-party plaintiff Sievers. The union has moved for summary judgment.

---

1. There are several "Sievers" corporations named as defendants—Sievers Hauling Corp., Sievers Rental Co., but they are all included within the answer of Sievers, Inc. This defendant will hereinafter be referred to as "Sievers", "third-party plaintiff" or "employer".

Viewing all the facts in a light most favorable to the third-party plaintiff, Sievers, *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870 (3d Cir. 1972), it appears that a crane was rented to McKinney Drilling Company, Inc., and that said company requested a crew to operate it. Pursuant to its contract, Sievers called the union hiring hall and requested a crew for the crane.[2] The union sent one Decker as an operator and one Anderson as an oiler/apprentice engineer to Sievers who processed their paper work (i. e. W–2 tax forms, etc.), and sent them on to the job site. There, they were under the direction and control of McKinney. At the time of the accident, Anderson was operating the crane. There is a factual dispute over whether it was union policy to permit an apprentice engineer to operate a crane for certain periods of time. As the subsequent determination of the instant motion makes clear, this issue is one of *material* fact.[3] As was noted earlier, Sievers contends that if the employees are found to have been incompetent, it should be indemnified by the union. This indemnity claim is based upon two theories: (1) a breach of contract by the union; (2) an implied right of indemnity. The union contends that Sievers cannot recover under the indemnification theories as a matter of law and, in the alternative, that Sievers is estopped from asserting the competency issue against it.

## BREACH OF CONTRACT

The third-party plaintiff, Sievers, and the union entered into a collective bargaining agreement which, *inter alia,* specifically required that whenever Sievers desired to employ workmen, it should call upon the union who would refer the needed and contractually specified workers from an open employment list. (Art. III, ¶ 1 of Agreement—Exh. B Third Party Defendant's Brief). The contract goes on to state:

2. Art. IV, B defines the type of crew members needed for various pieces of equipment including the crane here.

3. If Anderson is found to have been operating the crane at the time of the accident, and the union does not have a policy of permitting an

"[t]he Employer [Sievers] shall retain the absolute and unconditional right to reject any workmen referred by the Union." Art. III, ¶ 3.

"The Union, in referring workmen, shall give consideration to and shall be governed by the following criteria . . . :

\* \* \* \* \* \*

(c) Competency and experience in the performance of the particular tasks involved in the job to which referral is being made; \* \* \*"

Art. III, ¶ 4. Article IV, Part C, ¶ 6 entitled "Work Rules", states:

"(c) If an Engineer, Apprentice Engineer, [or] Oiler . . . is employed and is found incompetent, his services may be dispensed with and he shall be paid for actual time worked."

Sievers contends that if the employees are found to have been incompetent, and said incompetence proximately caused the injury, the union, being contractually obligated to refer competent workmen, should be held liable for the breach of this duty, thus creating indemnification through contract damages. The union asserts the defense of estoppel, relying largely on the contractual provisions permitting the rejection or discharge of any workmen referred by the union.

While it is true that the union did not warrant each workman against *negligent* conduct or agree to indemnify Sievers for liability imposed by such acts, this Court finds that the union did have an express duty under the contract to provide and refer competent workmen to perform the tasks requested. This, it appears, was the very essence of the referral portion of the agreement.

In *Ryan Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) the respondent steamship compa-

apprentice engineer to operate a crane, then it would appear that the union would not be liable since it did not refer Anderson to operate the crane. Anderson's competency as a crane operator would no longer be material.

ny entered into an agreement with the petitioner stevedoring company ". . . to perform all stevedoring operations required by respondent in its coastwise service". *Id.* at 126, 76 S.Ct. at 233. This agreement was arranged by letters with no formal stevedoring contract and no express indemnity agreement. Petitioner's longshoreman was injured when struck with a 3,200 pound roll of pulpboard which, it was established, was negligently stowed by petitioner's other longshoremen at the preceding port. The respondent shipowner was sued for failing to furnish petitioner's employee with a safe place to work, and respondent in turn filed a third-party complaint against the petitioner seeking indemnification. Noting that the respondent was relying entirely upon petitioner's contractual obligation to perform all of respondent's stevedoring operations including those in question, the Court said:

> "[t]hat agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. *Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract.* It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product." (Emphasis added).

*Id.* at 133, 134, 76 S.Ct. at 237. *Accord, Mayer v. Fairlawn Jewish Center,* 38 N.J. 549, 557–8, 186 A.2d 274 (1962).

As in *Ryan* and *Mayer,* the instant third party complaint is based upon the union's breach of its consensual obligation owed to Sievers to refer competent workmen. As was noted earlier, this was the essence of the referral contract. Similarly, there is the absence of an express agreement of indemnity, see also *Weyerhaeuser S.S. Co. v. Nacirema Co.,* 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958),—the foreseeable damages resulting from the breach serving as the indemnity. Thus the third

party plaintiff's first theory of indemnification will prevail, unless the union can successfully assert a contract defense. To this issue the Court now turns its attention.

The union contends that Sievers should be estopped from asserting its claim based upon the incompetency of the employees, as Sievers had the contractual right and the opportunity to reject incompetent workmen referred by the union and did not challenge the qualifications and ability of either employee prior or subsequent to the accident.

In *Ryan, supra* 350 U.S. at 134, 76 S.Ct. at 238, it was similarly argued that:

> ". . . because the shipowner had an obligation to supervise the stowage and had a right to reject unsafe stowage of the cargo and did not do so, it should now be barred from recovery from the stevedoring contractor or any damage caused by that contractor's uncorrected failure to stow the rolls 'in a reasonably safe manner'."

The Court ruled:

> "Accepting the facts and obligations as above stated, the shipowner's present claim against the contractor should not thereby be defeated. Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense. Respondent's failure to discover and correct petitioner's own breach of contract cannot here excuse that breach."

*Id.* at 134, 135, 76 S.Ct. at 238. *Accord, Mayer, supra,* 38 N.J. at 558, 559, 186 A.2d 274; *Weyerhaeuser, supra,* 355 U.S. at 567, 78 S.Ct. 438. This Court is in agreement with the aforesaid view and finds it controlling in the instant case. The contractual provisions in question which pertain to the employer are clearly permissive, and even though such provisions have been invoked from time to time by the employer, it's failure to discover the alleged incompetence

of these employees does not affect the liability as between it and the union. As between them, it was the union's responsibility to secure competent workmen. In addition, on the record as it now stands, the union has not demonstrated a clear case of estoppel under New Jersey law, as there must have been detrimental reliance. *Cf. Rossum v. Jones,* 97 N.J.Super. 382, 235 A.2d 206 (App.Div.1967). From the foregoing it would appear as if the third party plaintiff has set forth a proper basis for its indemnification claim based upon breach of contract.

### IMPLIED RIGHT OF INDEMNIFICATION

An examination of Sievers alternative theory of implied indemnity yields the same result as the one discussed above.

"The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. * * *"

*Public Service Elec. & Gas Co. v. Waldroup,* 38 N.J.Super. 419, 431, 119 A.2d 172, 179 (App.Div.1955), citing *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 370–1, (Sup.Ct.1951). In the case at hand, however, *both* Sievers and the union are not made responsible *by law* to the injured party (i. e., by breaching a legal duty owed him).[4] In such cases:

". . . when one of the two is not so liable, the right of the other to indemnity must be found *in rights and liabilities arising out of some other legal transaction between the two."* (Emphasis original).

*Ruvolo v. United States Steel,* 133 N.J.Super. 362, 367, 336 A.2d 508, 511 (L.D.1975),

citing *Slattery v. Marra Bros.,* 186 F.2d 134, 139 (2d Cir. 1951). Thus:

"[i]t is the existence of a special legal relationship sufficient to impose certain duties and a subsequent breach of those duties that permits an implied indemnification."

*Ruvolo, supra.*

In *Ruvolo,* the court found a lessor-lessee relationship sufficient to create duties between the parties, as in *Hagen v. Koerner,* 64 N.J.Super. 580, 166 A.2d 784 (App.Div.1961) where an agency relationship was found sufficient. In view of the collective bargaining agreement between the parties in the instant case, there can be little doubt that such a special legal relationship is present here. From this relationship the union was under a duty implied by law to provide competent workmen, and from a breach of this duty there may be a claim for recovery based on implied indemnification. *Ruvolo, supra* 133 N.J.Super. at 368, 336 A.2d 508. As suggested earlier, however, the right to implied indemnification enures to the party whose actions in causing the accident are disproportionately less than the actions of the other party to the special relationship. The law is clear in New Jersey that no indemnification is permitted between two tortfeasors whose independent acts of negligence concurred in the injury. *Mayer, supra* 38 N.J. at 562, 186 A.2d 274. See also, *Public Service Elec. etc., supra* 38 N.J.Super. at 431, 432, 119 A.2d 172; *Ruvolo v. U. S. Steel Corp.,* 139 N.J.Super. 578, 354 A.2d 685 (L.D.1976). To recover under an implied right of indemnity, one must, under the case law, be only *secondarily* liable.

". . . [S]econdary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based upon some legal relation between the parties, or arising from some positive rule of common or statutory law, or because of a failure to discover or correct a defect or remedy a dangerous

4. Indeed, it is not clear that either party is responsible by law on the incompetency claim

(i. e., negligent hiring); but see discussion, *infra.*

condition caused by the act of the one primarily responsible."

*Public Service Elec. etc., supra* 38 N.J.Super. at 431, 119 A.2d at 179. It will, of course, be for the jury to determine from the evidence whether Sievers engaged in its own positive tortfeasance which was independent of, and not included within, the scope of the union's duty. *Mayer, supra,* 38 N.J. at 562, 563, 186 A.2d 274. From the present state of the record, however, this court cannot say that Sievers was primarily liable as a matter of law, thus barring its implied right of indemnification. Sievers' liability may arise from the negligent acts of its employees under the doctrine of respondeat superior; or liability may arise because of a nondelegable duty imposed by the common law rule that the master is responsible:

> ". . . for injuries to third persons resulting from acts of the incompetent servant, whether the master's knowledge of the servant's incompetency was actual or direct or *constructive* ; . . ." (Emphasis added).

57 C.J.S. *Master-Servant* § 559 (1948). See discussion, *infra.* See also, *Mayer, supra.* In either event, however, the liability would clearly be *secondary* as described above, and would not prevent recovery based on implied indemnification. Nor, as the union contends, would the fact that Sievers failed to discover and discharge the allegedly incompetent employees referred and provided by the union warrant a finding of primary liability. Recovery against the union would still be permissible in this event. *Mayer, supra* at 558, 562, 563, 186 A.2d 274; *Popkin Bros. v. Volk's Tire Co.,* 20 N.J.Misc. 1, 23 A.2d 162 (1941); compare *Ruvolo, supra* 139 N.J.Super. at 584, 354 A.2d 685.

From the foregoing, it appears that the third party plaintiff's alternative theory of implied indemnity is viable in the instant case and perhaps not surprisingly, the result is the same as that reached under the employer's breach of contract theory.

> "Conceptually, . . . the breach of contract remedy—particularly when the liability of [Sievers] to [Nivins] is *secondary* or constructive negligence—bears a substantial resemblance to the principles underlying implied indemnity and restitution." (Emphasis original).

*Mayer, supra* 38 N.J. at 561, 186 A.2d at 281. Even under the less traditional and more public policy oriented analysis suggested by Mr. O'Donnell in his excellent article *Implied Indemnity in Modern Tort Litigation: The Case for a Public Policy Analysis,* 6 Seton Hall L.Rev. 225 (1975), the result would be the same.

 Union hiring halls have become a normal and successful manner of providing skilled, semi-skilled, and unskilled labor for construction and similar projects in this country. Indeed, as the union points out in its brief, the hiring hall concept has been viewed as a valuable industrial relations tool. *Mountain Pacific Chapter,* 119 N.L.R.B. 883 (No. 126A) (1958). This activity is not without its responsibilities, however. With projects large and small, various companies and contractors often request workmen who are capable of doing very specific jobs. (For example, the instant party defendants had a contract which set forth the specific type of crews necessary to operate various pieces of machinery. See Art. IV, B—Exh. B. Third Party Defendant's Brief). These requests from employers with few, if any, full time employees of the type desired, are made with reliance upon the union to provide a workman who can competently complete the assigned task. Although it might be desirable to have a "double-check" on competency by both the union and the employer, as a practical matter it is often not possible for the employer to make such a check in view of the large and transient numbers who fill the hiring halls and appear on various job sites.[5] If

---

5. This is not to say that upon proof of *actual knowledge* of the incompetence of a particular employee acquired by virtue of conduct on a previous job or conduct prior to the accident in question, the employer would still be successful in his indemnification claim. However, the accident itself cannot be regarded as giving the employer notice of the servant's dangerous character or incompetence so as to render him liable for failure to discharge the employee in

the union chooses to operate as the organizer and distributor of the labor supply, it cannot be permitted to perform without any concern or responsibility for the competency of the individuals it refers. On the record as it presently stands and viewing same in a light most favorable to the third party plaintiff, this Court finds that if the jury's verdict permits, indemnification by the union is a proper remedy in the instant case. But see, discussion *infra.*

## NEGLIGENT HIRING

■ A matter which has not been determined but must be discussed is the existence of a cause of action for negligent hiring—that is, the hiring of an incompetent employee. Before the third party defendant, Sievers, can recover on its indemnity claim, it must be held liable to the plaintiff under that claim. So far as this Court can determine, no New Jersey court has ever passed upon this issue, leaving this Court with the arduous task of applying what it finds the law of New Jersey to be. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). In so doing, this Court sits only as another court of this State, *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 203, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

A cause of action based upon negligent hiring has been recognized in some jurisdictions.

"A master may be liable for injuries inflicted on a third person by his servant where he was guilty of negligence in selecting a servant incompetent or other-

advance of the accident. *Phillips Adm'r v. Tway,* 269 Ky. 583, 108 S.W.2d 525.

**6.** For the purposes of this motion it is sufficient that the Court find that Sievers' indemnity claim against the union has a basis in law. The plaintiff has alleged negligent hiring in his complaint, but as suggested earlier, he may pursue the somewhat easier approach of proving employee negligence. If only the latter approach is taken, the Court wonders where the evidence of incompetency will come from. This is left for the parties to consider.

**7.** These special interrogatories would probably include:

wise unfit to perform the services for which he was employed, *and this is especially true* where skill and capacity are required for the performance of the services or *where the services require the use of instrumentalities which are very dangerous if not skillfully handled."* (Emphasis added).

57 C.J.S. *Master-Servant* § 559 (1948). Probably the main reason why this cause of action has not often been pursued lies in the availability of the more common remedy against the employer provided through the doctrine of respondeat superior. The negligence of an employee is often easier to prove than his incompetence, and whether the employer knew or should have known of it. Even so, this Court can see no reason why a cause of action based upon negligent hiring could not be pursued and will permit proofs to be submitted on the issue.

■ Insofar as the trial of this matter is concerned, the Court is unsure exactly who will attempt to prove the incompetency of the employees, but this problem need not be dealt with at this juncture.[6] If sufficient evidence of incompetence is not presented and the case is submitted to the jury solely on the issue of employee negligence, Sievers cannot claim indemnification for there must be a clearly intended and express agreement to indemnify it against employee negligence. *Rommell v. U. S. Steel Corp.,* 66 N.J.Super. 30, 43, 168 A.2d 437 (App.Div. 1961). If there is sufficient evidence presented to submit the competency question to the jury, special interrogatories will definitely be necessary.[7]

(1) Was the employee who was operating the crane at the time of the accident incompetent (as defined) at that time?
(2) If so, was that incompetence the proximate cause of the accident?
If the answer to these two questions is "yes", there will be no need to make any inquiry as to the negligence of the employee. This is so because the standard of care owed the plaintiff is that of a reasonably competent crane operator, *Restatement (Second) of Torts,* § 299A (1965), and the jury would have already found that conduct below that standard of care was the proximate cause of the accident. If the answer to either of the questions is "no", then no indemnification against the union would be

For the reasons set forth in this opinion, the third party defendant's motion for summary judgment is denied.

Submit an order.

permitted, and findings on negligence would be necessary. In either event, comparative negligence findings would be relevant and would have to be taken into consideration on the question of damages. Other findings may also be necessary, and the Court does not wish to foreclose that possibility by the above discussion.