NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3408-18T1

THOMAS MCKEOWN,

     Plaintiff-Appellant,

v.

AMERICAN GOLF
CORPORATION, d/b/a BEAVER
BROOK COUNTRY CLUB, and
BRIAN ROBINSON,

     Defendants,

and

PHILIP CAPAVANNI,

     Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

February 7, 2020

APPELLATE DIVISION

Submitted January 14, 2020 – Decided February 7, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0996-17.

Piro Zinna Cifelli Paris & Genitempo, LLC, attorneys for appellant (Daniel Robert Bevere, on the briefs).

Law Office of Patricia Palma, attorneys for respondent (Jane C. Nehila, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

A simple round of golf led to this personal injury suit. Plaintiff claims he was injured when struck by a golf cart rented by defendant Philip Capavanni and driven by defendant Brian Robinson. All plaintiff's claims have been resolved except for that which we now consider: whether the evidential materials, when viewed in the light most favorable to plaintiff, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), created a jury question whether Capavanni negligently entrusted the operation of his rented golf cart to Robinson. Because there was a genuine factual dispute about Robinson's competency to operate a golf cart, we reverse the summary judgment entered in Capavanni's favor.

The record reveals that Capavanni is an experienced golfer. He acknowledged at his deposition that he has played approximately sixty rounds of golf per year over the last thirty-five years. Robinson – Capavanni's then eighty-two-year-old father-in-law – is a resident of Scotland. At the time of the incident in question, Robinson was in the United States for only the second time. Capavanni testified at his deposition that he had never seen Robinson drive a motor vehicle or a golf cart; he also did not think Robinson possessed a driver's license.

A-3408-18T1

Capavanni and Robinson were playing in a foursome at the Beaver Brook Country Club on May 24, 2015, with plaintiff and another golfer. Capavanni rented a golf cart, as did plaintiff, from defendant American Golf Corporation (AGC), which operates Beaver Brook. In signing his rental agreement, Capavanni agreed to "assume all risk" associated with the cart's use; he also represented that he was "familiar with [its] operation and proper use" and he promised he would not permit the cart to be operated by anyone under the age of sixteen "or anyone unfamiliar with the operation and proper use of the cart."

At the ninth hole, Capavanni drove the cart to a spot approximately 100 yards from the green. Robinson then got behind the wheel and drove alone toward the green. Meanwhile, plaintiff parked his cart near the green. As plaintiff retrieved his putter from the rear of his cart, he heard the other cart approaching. He tried to get out of the way but was pinned between his cart and the Capavanni cart Robinson was driving. When Capavanni arrived, he saw that plaintiff's leg was "split open," so Capavanni used his belt as a makeshift tourniquet. In explaining what occurred, Robinson told Capavanni that a rangefinder, which was unsecured on a shelf near the steering wheel, fell and became lodged under the brake pedal, thereby preventing him from stopping.

A-3408-18T1

Plaintiff's suit was brought against AGC, Capavanni, and Robinson. AGC obtained summary judgment in July 2018. Capavanni's summary judgment motion was granted in January 2019, for the reasons expressed by the judge in a written opinion. A default judgment was entered against Robinson in February 2019.

In appealing, plaintiff argues, in a single point, that the motion judge erred in granting summary judgment on his claim that Capavanni negligently entrusted his leased cart's operation to Robinson. We agree and reverse.

Although the motion judge correctly assumed there was evidence to support plaintiff's assertion that Robinson was unfamiliar with the operation of golf carts,[1] he incorrectly conflated plaintiff's negligent entrustment theory with

---

[1] In citing to relevant portions of Capavanni's deposition, the judge determined that "Robinson is a longtime golfer, and Capavanni and Robinson have played golf together many times in Scotland, Robinson's home country. However, in Scotland, the birthplace of golf, it is not common to use a golf cart, and Capavanni stated his belief that Robinson had never driven a golf cart before" (footnote omitted). In his brief in this court, Capavanni argues that it is not "accurate" that "Capavanni should have known Robinson never drove a golf cart." In making this statement, Capavanni refers to that portion of his deposition where he said that he (Capavanni) has "used a golf cart when [he has] played golf with" Robinson. That statement, however, does not require an assumption that Robinson ever operated the golf cart on those other occasions. We agree with the judge that, because the question was posed by way of a summary judgment motion, the record requires an assumption that Robinson was unfamiliar with and inexperienced in the operation of golf carts.

the scope of the rental agreement and, on top of that, viewed the falling rangefinder as an unforeseen event that negated or superseded the significance of Robinson's inexperience behind the wheel of a golf cart.

In short, the disposition of the negligent entrustment theory seems to be based solely on the motion judge's following two observations:

- the rental agreement "is an adhesion contract that places a duty upon Capavanni to operate the cart in a careful manner so as to avoid loss or risk to the Golf Club," and

- it was not "foreseeable that the rangefinder would become lodged under the pedals as a result of Robinson's inexperience with golf carts."

We reject both these assumptions.

First, we reject the notion that the golf cart rental agreement supports Capavanni's position. With or without that agreement, Capavanni had a common law obligation to refrain from entrusting the golf cart to an incompetent operator. In a similar context, our Supreme Court has broadly held that "persons must use reasonable care in the employment of all instrumentalities – people as well as machinery – where members of the public may be expected to come into contact with such instrumentalities." Di Cosala v. Kay, 91 N.J. 159, 171 (1982). In Di Cosala, the Court recognized that liability may attach when one retains an aggressive or reckless employee. The Di Cosala opinion also referred to, with

approval, a federal district court decision, <u>Nivins v. Sievers Hauling Corp.</u>, 424 F. Supp. 82, 89 (D.N.J. 1976), that predicted our Supreme Court would come to this conclusion in a case – more like that here – where an employer was alleged to have hired an incompetent or unfit crane operator. <u>Di Cosala</u>, 91 N.J. at 169-70. Very recently, the Court reaffirmed its adherence to these concepts. <u>See</u> <u>G.A.-H. v. K.G.G.</u>, 238 N.J. 401, 416 (2019).

Like the hiring of an employee who could not competently operate a crane, as in <u>Nivins</u>, Capavanni entrusted a golf cart to someone allegedly unfamiliar with its use. The only difference here is the absence of an employment relationship between the defendant and the alleged incompetent operator, but that was not an essential feature of those earlier holdings. An owner of a chain saw, a firearm, a boat, or a motor vehicle, as well as any other device capable of causing injury when misused, has an obligation to avoid entrusting such a device to a person unfamiliar with its use. <u>See</u> <u>Restatement (Second) of Torts</u>, § 390.[2] Taking the most obvious and frequently occurring example, is there any doubt

---

[2] This section states that "[o]ne who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

that it is a negligent act to allow use of a motor vehicle to an uncredentialed individual who has no experience operating a motor vehicle on public roadways? Our Supreme Court has recognized a motor vehicle owner's liability in such an instance.  See Mead v. Wiley Methodist Episcopal Church, 4 N.J. 200, 206 (1950); see also Karen L. Ellmore, Annotation, Negligent Entrustment of Motor Vehicle to Unlicensed Driver, 55 A.L.R. 4th 1100 (1987).  Is there any conceptual difference when the vehicle is a golf cart?  We think not.

Because we have determined that Capavanni had a common law duty not to allow the cart's use by an incompetent operator, our analysis does not require consideration of the judge's determination that the rental agreement is a contract of adhesion or that the agreement did not impose such a duty.  We consider the agreement only because of the parties' and the judge's emphasis of it.

To start, we reject the assumption that the agreement was a contract of adhesion.  There is no evidence that it was presented to Capavanni on a "take-it-or-leave-it basis . . . without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars."  Rudbart v. No. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992).  But, even assuming otherwise, those circumstances only open the door to an inquiry into whether the alleged contract of adhesion is enforceable.  Interestingly, despite the assertion that the rental

agreement is a contract of adhesion, there seems to be no claim that the agreement was unenforceable.[3] That label merely seems to have been affixed to the agreement as a way of minimizing its significance to plaintiff's claim.

The real assertion on which the ruling was based was the judge's determination that the agreement's scope of intended beneficiaries was limited. That is, the judge determined – as revealed by his emphasis in his opinion on the phrase "to the Golf Club" – that only AGC was a beneficiary of Capavanni's promise to keep the cart out of the wrong hands. To be sure, AGC's interest in securing a renter's promise not to entrust the cart to someone incapable of safely using it was not altogether altruistic. AGC's own well-being was obviously of great interest to it. By securing Capavanni's promise, AGC was undoubtedly

---

[3]  An agreement's status as a contract of adhesion only begins the analysis into its enforceability.  In determining enforceability, a court must consider "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the adhering party, and the public interests affected by the contract."  Id. at 356. The judge did not analyze the rental agreement in light of these factors.  If he had, he would have found it readily apparent there was no economic compulsion motivating Capavanni. This was not a contract for something that is "a common and necessary adjunct of daily life."  Rudbart, 127 N.J. at 354 (quoting Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 387 (1960)); see also McBride v. Minstar, Inc., 283 N.J. Super. 471, 491 (Law Div. 1994), aff'd o.b., 283 N.J. Super. 422 (App. Div. 1995).  No one needs to rent a golf cart, and the public has no great interest in the content of such agreements.

A-3408-18T1

creating the grounds upon which it could seek indemnification if an injury resulted.

But there is no reason to assume – even accepting AGC's prime motivation was its own self-interest – that AGC was not looking to ensure the safety of all its patrons, including those who might be injured from the cart renter's negligence. Barring any compelling evidence to the contrary, the law would assume from such an agreement that a party who allows another to use some instrumentality in exchange for both a fee and a promise that the instrumentality's use will be limited, not only seeks to insulate itself from liability but also seeks to prevent incidents that might generate the reason for seeking indemnification in the first place.[4] So, the only question about the agreement – regardless of whether it was a contract of adhesion – concerns whether the injured person fell within the scope of foreseeable beneficiaries of Capavanni's promise. The fact that plaintiff was on the golf course and, in fact,

---

[4] We assume the judge was not suggesting – through his emphasis of the fact that Capavanni only contracted with AGC – that the absence of privity of contract between plaintiff and Capavanni constituted a bar to plaintiff's claim. The reach of one's duty of care is not limited by contract principles but by "considerations of foreseeability and fairness." Carter Lincoln-Mercury v. EMAR Group, 135 N.J. 182, 196 (1994); Ranier v. Frieman, 294 N.J. Super. 182, 188 (App. Div. 1996).

in the same foursome with Capavanni and Robinson, meant that he fell within the agreement's scope of protected persons.

For these reasons, we reject the judge's first assumption that the rental agreement governed Capavanni's acts or omissions and that it was intended to insulate only AGC.

Second, we reject the judge's determination that Capavanni was entitled to summary judgment on this theory based on an assumption that it was not "foreseeable that the rangefinder would become lodged under the pedals as a result of Robinson's inexperience with golf carts." This assumption actually combines two separate notions, the first being that the rangefinder's fall was unforeseeable, and the second apparently being the judge's conclusion – if we have interpreted his observation correctly – that the same incident would have resulted if an experienced operator was driving the golf cart.

Questions like this are particularly fact sensitive. Not only did the judge mistakenly give the summary-judgment movant the benefit of reasonable inferences instead of the opponent, but we are also satisfied that the judge took over the role of the jury in drawing his multifaceted assumption. It was for the jury to decide whether it was foreseeable that the particular placement of an

unsecured item – here a rangefinder – could lead to its falling to the operator's feet where it could cause problems with the operation of the cart's foot pedals.

Viewing this event in the light most favorable to plaintiff instead of the movant, the placing of a loose item in a place in a vehicle where it could interfere with the operator's use of the cart's pedals seems reasonably foreseeable. Indeed, the particular placement of the rangefinder could be viewed as simply another alleged act of negligence on the part of the cart's users or possessors. In addition, it was for the jury to determine whether Robinson's inexperience with golf carts was a proximate cause of the cart's collision with plaintiff.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION